RUDOLPH CATALDO & others[1] *vs.* RESTAURANT
ASSOCIATES, INC. & another.[2]

Suffolk. November 20, 1978. — December 11, 1978.

Present: HALE, C.J., GRANT, & ARMSTRONG, JJ.

*Contract,* Construction, Lease of real estate.

Under a lease which provided that annual rent would consist of a "minimum" rent, plus a "percentage rent" up to a stated maximum, based on seven per cent of a portion of the lessee's gross receipts, and payments on account of real estate taxes, a provision that the payments made by the lessee on account of real estate taxes should be credited and offset against the percentage rent due "except that such payments on account of real estate taxes shall be added to the maximum [p]ercentage [r]ent" required that in all years in which payments on account of real estate taxes were made the maximum percentage rent was to be increased by the amounts of those payments, and did not automatically preclude the lessee from offsetting payments on account of real estate taxes during years when the percentage rate reached the stated maximum. [720–724]

CIVIL ACTION commenced in the Superior Court on July 22, 1974.

A motion for summary judgment was heard by *Ronan, J.,* on a special master's report.

*Richard Bancroft* for the defendants.

*W. Paul Needham* for the plaintiffs.

GRANT, J. The lessors of certain premises in Cambridge have brought the present action to recover a portion of the rent which they claim is due them for each of the

---

[1] Ernest Carino and Marino Carino.

[2] Restaurant Associates Industries, Inc.

calendar years 1969 through 1973[3] under the provisions of a 1967 lease of the premises. The defendants are the corporate successors to the original lessee and a guarantor of the lease, respectively. There is no dispute as to any material fact, and a summary judgment was entered which awarded the plaintiffs the total of the amounts claimed by them for the years 1969 through 1973, with interest. The defendants have appealed.[4]

There are three separately stated components of the annual rent reserved under the lease: (1) a "Minimum Rent"; (2) a "Percentage Rent," based on seven percent of a portion of the lessee's "Gross Receipts" (as defined); and (3) "payments made . . . on account of real estate taxes in accordance with [§ 3(d) ] hereof" (which we shall occasionally refer to as the "payments on account of real estate taxes").[5] There is no dispute in any of the years still involved (see note 4, *supra*) as to the amount yielded by the calculations necessary to arrive to any single component, standing by itself; the dispute is as to the interrelationship between (2) and (3) in those years. The plaintiffs contend that (3) must be added to the sum of (1) and (2); the defendants agree to (1) but contend that (3) may be taken as a credit against (2). If the plaintiffs are correct, the undisputed facts are such that the judgment must stand; if the defendants are correct, the judgment must be modified so as to cover only the liability which the defendants have conceded with respect to the year 1969 (see note 4).

---

[3] The amended complaint also sought damages with respect to the calendar years 1974 and 1975, but it is clear from the face of the plaintiffs' motion for summary judgment that they no longer seek damages with respect to either of those years or with respect to the year 1976.

[4] In their original brief before us the defendants, for reasons unrelated to the merits of their appeal, have conceded liability for the amount claimed by the plaintiffs with respect to the year 1969 ($21.11). Accordingly, we are concerned only with the years 1970 through 1973.

[5] Section 3(b) of the lease uses the words "subparagraph (b) hereof," but the parties agree in their briefs that the intended reference is to § 3(d) of the lease.

Section 3(a) of the lease establishes the "Minimum Rent," which is not in dispute and which has been paid in all years. Section 3(b) commences, "In addition to the Minimum Rent, Lessee agrees to pay to Lessors during the term of the lease percentage rent ('Percentage Rent') in an amount equal to seven (7%) percent of the amount, if any, by which the Gross Receipts, as hereinafter defined, from the business conducted at the demised premises in each calender year exceeds ... $357,143.00 ...."[6] (We shall refer to this provision as the "seven percent calculation.") Section 3(b) continues, "Any payments made by Lessee on account of real estate taxes in accordance with [§ 3(d)] hereof shall be credited and offset against any Percentage Rent due hereunder, *except that such payments on account of real estate taxes shall be added to the maximum Percentage Rent of ... $30,000 ...* set forth below" (emphasis supplied).[7] (We shall refer to the italicized words as the "except" clause.) The remaining portion of § 3(b) which is relevant for present purposes reads, "Lessee shall in no event, except as to payments against real estate taxes as provided above, be required to pay Percentage Rent in an amount in excess of ... $30,000 ... per year ...." The material portion of § 3(d) reads, "In addition to the Minimum Rent, hereinabove provided for, the Lessee shall pay as additional rent for each calendar year ... during the term of this lease ... a sum equal to thirty-three (33%) percent[8] of the

---

[6] This figure was changed to $614,283 during the lattter part of 1969 by reason of a self-executing provision of the lease (§ 6[b][ii]) which took effect when the lessee exercised an option given it under the lease to take additional space owned by the lessors which had not formed a part of the premises originally demised.

[7] For the same reason indicated in note 6, the figure of $30,000 was changed to $37,000 for the years commencing with the calendar year 1970. The specific language of § 6(b) (iii) of the lease is as follows: "The maximum Percentage Rent due from Lessee shall be $37,000 per annum, plus payments against real estate taxes as provided in [§ 3(d)] hereof."

[8] For the same reason indicated in note 6, the thirty-three per cent

amount, if any, by which the . . . real estate tax assessed upon the real property of which the demised premises form a part exceeds the amount of the base real estate tax[9] assessed upon such real property."

In 1969 the "seven percent calculation" resulted in an amount higher than $30,000; in the years 1970 through 1973 that calculation resulted in amounts higher than $37,000. The plaintiffs' arguments (apparently accepted by the judge) are (1) that since the "seven percent calculation" resulted in an amount higher than $30,000 in 1969 and in amounts higher than $37,000 in the years 1970 through 1973, the lessee was (using the words of the plaintiffs' motion for summary judgment and their brief) in a "maximum percentage rent situation" in all years and (2) that by reason of the "except" clause the lessee was not entitled to offset its "payments on account of real estate taxes" against the relevant "maximum Percentage Rent" due in any year.

Reading all of the quoted provisions of the lease together, as we must, we believe the plaintiffs and the judge have misconstrued both the "except" clause and the lease provisions as to "maximum Percentage Rent." Section 6(b) (iii) of the lease (see note 7, *supra*) is explicit on the point that the "maximum Percentage Rent" for 1970 and subsequent years is to be calculated by adding the "payments against real estate taxes" to the figure of $37,000. In each of those years that calculation resulted in a "maximum Percentage Rent" greater than the "Percentage Rent" derived solely from the "seven percent calculation." Thus the lessee was not, as the plaintiff contend, in a "maximum percentage rent situation" in those years.

was changed to fifty percent for the years commencing with the calendar year 1970. The specific language of § 6(b)(iv) is: "The additional rent on account of real estate tax shall be a sum equal to fifty percent of the increase in real estate tax computed in accordance with the provisions of § 3(d) hereof."

[9] There is no need to consider the lease definition of the "base real estate tax."

We construe the "except" clause as requiring that in all years in which "payments on account of real estate taxes" are made pursuant to § 3(d) the "maximum Percentage Rent" is to be increased by the amounts of those payments. It strikes us that the reason for expressing such a provision in the form of an exception to the credit and offset provision was that the purposes of the "except" clause were to provide for a partial cancellation of the credit for "payments on account of real estate taxes" once the result of the "seven percent calculation" should exceed $30,000 in 1969 or $37,000 in any subsequent year and to provide for a complete cancellation of the credit if the result of the "seven percent calculation" should exceed $30,000 in 1969 or $37,000 in any subsequent year by the amount of the "payment on account of real estate taxes."

To illustrate this point let us look at the year 1970. In that year the "payment on account of real estate taxes" made by the lessee was $2,768.01. Under our interpretation the "maximum Percentage Rent" increased from $37,000 to $39,768.01. Suppose that the result of the "seven percent calculation" had been $39,768.01. The percentage rent to be paid under § 3(b) before the credit would have been $39,768.01, the lessee would have been entitled to a credit of $2,768.01, and the percentage rent due after the credit would have been $37,000, with the result that the increase in the "maximum Percentage Rent" and the credit would have cancelled each other. If the "seven percent calculation" had resulted in a figure between $37,000 and $39,768.01, the fact that the percentage rent due before the credit would have been more than $37,000 (but less than $2,768.01 more), would have resulted in a partial cancellation of the credit. Interpreting the "except" clause and the lease provisions concerning "maximum Percentage Rent" in this manner leads to a smooth and seemingly fair transition into the so-called "maximum rent situation."

By contrast, if we were to accept the plaintiffs' interpretation, there would have been no such transition. Let us look again at the year 1970. If the lessee's gross receipts in that year had been such that the "seven percent calculation" would have resulted in a figure of $36,999.99, the lessee would have been entitled to a credit of $2,768.01 against its percentage rent. But if the lessee's gross receipts had been only fourteen cents higher, the "seven percent calculation" would have resulted in a figure one cent higher, or $37,000, and the lessee would not have been entitled to a credit for any part of the $2,768.01 actually paid by it for taxes. In other words, an increase in gross receipts of only fourteen cents would have resulted in an increase of $2,768.01 in the total rent due for one year.

"So far as reasonably practicable [a contract] should be given a construction which will make it a rational business instrument and will effectuate what appears to have been the intention of the parties." *Berkal* v. *M. DeMatteo Constr. Co.,* 327 Mass. 329, 333 (1951). Although the question is not entirely free from doubt, we are of the opinion that the interpretation contended for by the defendants accomplishes those objectives and is the correct one.

It follows that the judgment is to be modified so as to provide that the plaintiffs are to recover the sum of $21.11,[10] together with interest on that sum from the date it should have been paid under the provisions of § 3(d) of the lease. Costs of appeal are not to be awarded to any party.

*So ordered.*

---

[10] See note 4, *supra.*